UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FREDRIC DIXON,

    Plaintiff,

v.

ROBERT BANNISTER, HOWARD SKOLNICK, NEVADA DEPARTMENT OF CORRECTIONS, STATE OF NEVADA, and DR. BITAR,

    Defendants.

2:10-CV-01714-PMP-RJJ

ORDER

    Before the Court is Defendants' Motion for Summary Judgment (Doc. #16), filed on June 20, 2011. Plaintiff Fredric Dixon filed an Opposition (Doc. #25) on August 30, 2011. Defendants filed a Reply (Doc. #27) on September 16, 2011.

**I. BACKGROUND**

    Plaintiff Fredric Dixon is an inmate at Southern Desert Correctional Center ("SDCC") in Indian Springs, Nevada. (Defs.' Mot. Summ. J. (Doc. #16), Statement of Material Facts ["SOF"][1] ¶ 1.) Defendant Bruce[2] Bannister ("Bannister") is the Medical Director for the Nevada Department of Corrections ("NDOC"). (Id. ¶ 2.) Defendant Howard Skolnik ("Skolnik") is NDOC's Director. (Id. ¶ 3.) Defendant Paul Bitar ("Bitar") is a Senior Institutional Dentist at SDCC. (Id. ¶ 4.)

---

[1] Plaintiff does not dispute Defendants' Statement of Material Facts except for paragraph twenty-two. (Pl.'s Opp'n to Defs.' Mot. Summ. J. at 3.)

[2] This Defendant is incorrectly named as Robert Bannister. (Defs.' Mot. Summ. J. at 3 n.5.) The Court will direct the Clerk of Court to correct the case caption.

1    Prior to his incarceration, Plaintiff had cosmetic dental work on his teeth,
2 including placement of crowns and veneers. (Id. ¶ 7; Pl.'s Opp'n to Defs.' Mot. Summ. J.
3 (Doc. #25) ["Pl.'s Opp'n"], Dixon Aff. at 4.) After his incarceration, three of those veneers
4 (tooth numbers 7, 8, and 10) broke or were removed. (SOF ¶ 8.)
5    In April 2009, Plaintiff submitted a dental kite for which he was seen on June 12,
6 2009 by Bitar. (Id. ¶¶ 5-6.) According to Bitar, Plaintiff complained of pain from gingival
7 inflammation, particularly around the "impending crown" on Plaintiff's upper left central
8 incisor. (Defs.' Mot. Summ. J., Ex. A, Bitar Decl. at 2.) Bitar states that removal of the
9 crown would alleviate the problem by "allowing better access for hygiene." (Id.) Bitar's
10 notes from the date in question state as follows:

> [Patient] has generalized pain due to gingival inflammation. [Patient's chief complaint] is #9. It has a full ceramic crown. No abnormal findings found but [patient] wants it removed to match #7, 8, 10 that had crowns previously. It is the only crown left in the anterior and [patient] does not like the way it looks compared to the other teeth that are just prepped. Explained risks of removing crown but [patient] opted for removal. Consent signed. Removed crown . . . [Patient] satisfied.

(Defs.' Mot. Summ. J., Ex. A, Bitar Decl., Attach. 1.) Plaintiff consented to removal of the crown and Bitar removed it from Plaintiff's upper left central incisor (tooth #9). (Defs.' Mot. Summ. J., Ex. A, Attach. 1; SOF ¶ 6.)

   According to Plaintiff, Bitar did not see Plaintiff for complaints of pain related to his remaining crown; rather, Plaintiff did not like the fact that his incisor did not match his other teeth which were missing crowns. (Pl.'s Opp'n, Dixon Aff. at 2.[3]) Plaintiff avers that Bitar did not fully explain to him any potential health or dental risks associated with removing the crown prior to Bitar removing it. (Id. at 1.) Plaintiff further states that Bitar

---

[3] Defendants object to most paragraphs of Dixon's affidavit on grounds of hearsay or lack of personal knowledge. Because consideration of Dixon's affidavit does not change the result in this matter, the Court will overrule the objections as moot.

2

did not advise him prior to removing the crown that NDOC regulations prohibited cosmetic or elective dental services, that NDOC dentists could not provide replacement crowns or veneers, or that removing the crown would pose any health risks. (Id. at 3.) According to Plaintiff, he would not have approved removing the crown on his tooth if Bitar had so advised him. (Id. at 4.)

On September 30, 2009, Plaintiff submitted a dental kite complaining of pain in his front teeth. (Id. ¶ 10; Defs.' Mot. Summ. J., Ex. A, Attach. 4.) In the meantime, Plaintiff filed a grievance relating to his dental problems. (SOF ¶ 11; Defs.' Mot. Summ. J., Ex. B, Attach. 1.) On January 11, 2010, Plaintiff saw Bitar again. (Id. ¶ 14.) Bitar advised Plaintiff he could extract Plaintiff's four teeth, but he suggested Plaintiff instead wait to hear back from NDOC's Utilization Review Panel ("URP") as to whether the URP would approve Plaintiff's request to be seen by an outside dentist to replace the missing veneers or crowns. (Id. ¶ 16.) The URP is a panel which reviews for medical necessity any inmate requests for off-site medical services. (Defs.' Mot. Summ. J., Ex. D.) NDOC Administrative Regulation ("AR") 631.04 provides that NDOC will not provide cosmetic dental services. (Defs.' Mot. Summ. J., Ex. C.) Services may be provided from an outside consultant if warranted by the circumstances and if approved by the URP. (Id. at AR 631.06.) Plaintiff's outside dentist agreed to replace the crowns and veneers at no cost to NDOC or Plaintiff, and Plaintiff agreed to cover any of NDOC's costs to transport Plaintiff to and from the outside dentist. (Pl.'s Opp'n, Dixon Aff. at 4-5.)

The URP denied the request. (SOF ¶ 17; Defs.' Mot. Summ. J., Ex. A, Attach. 5.) Plaintiff thereafter filed his second level grievance, to which NDOC responded by referring Plaintiff to the dentist at SDCC. (Id. ¶ 19-20; Defs.' Mot. Summ. J., Ex. B, Attach. 1.)

According to Bitar, neither removal of the crown nor the refusal to permit Plaintiff to obtain veneers at his outside dentist place Plaintiff at an increased risk for

gingivitis, diabetes, or heart disease as Plaintiff contends. (Defs.' Mot. Summ. J., Bitar Decl. at 3.) Bitar also states that extraction of the four teeth and placement of a partial denture is a viable option which is available at NDOC if Plaintiff chooses to pursue that route. (Id.)

Plaintiff brought suit in Nevada state court against Bannister, Skolnik, and Bitar, and Defendants removed the action to this Court. (Pet. for Removal (Doc. #1).) Count one of Plaintiff's First Amended Complaint asserts Bitar violated the Eighth and Fourteenth Amendments to the U.S. Constitution; Article 1, Sections 6 and 8 of the Nevada Constitution; and various Nevada state statutes regarding the treatment of prisoners by refusing to provide Plaintiff with necessary dental care. Count two asserts Bannister, Skolnik, and Bitar violated the Eighth and Fourteenth Amendments to the U.S. Constitution; Article 1, Sections 6 and 8 of the Nevada Constitution; and various Nevada state statutes regarding the treatment of prisoners by promulgating or permitting a policy, practice or custom of not providing needed dental care to remedy Plaintiff's condition and refusing to allow Plaintiff to obtain offsite dental care.

Defendants now move for summary judgment, arguing that Plaintiff's claim amounts to nothing more than a difference between his lay opinion regarding appropriate dental care and Bitar's professional opinion that extraction is a viable treatment option, and that does not amount to deliberate indifference. Defendants also argue that neither Bannister nor Skolnik personally participated in any alleged constitutional violation. Alternatively, Defendants argue they are entitled to qualified immunity because Plaintiff cannot show a clearly established right to receive cosmetic dental services. Finally, Defendants contend that punitive damages are not appropriate because there is no evidence any Defendant acted recklessly or with callous indifference to Plaintiff's rights.

Plaintiff responds that his case is not predicated on a difference between his opinion and Bitar's; rather, Bitar indicated the primary treatment for Plaintiff's dental

4

condition was replacement of crowns and veneers, and Bitar thus told Plaintiff to wait on extracting any teeth while Bitar sought URP approval for the outside services.  Plaintiff further contends that extraction of his teeth is an unreasonable treatment option where a private dentist has agreed to perform the services free of charge and Plaintiff has agreed to cover any transportation costs NDOC might incur.  Plaintiff argues that were a limb at issue, severing the limb would be an unreasonable treatment option and the same should hold for his teeth where an available, cost-free alternative is available.

As to personal participation, Plaintiff contends that Bannister and Skolnik were members of the URP that denied Plaintiff's referral for outside services.  Plaintiff also argues Bannister and Skolnik, as NDOC Director and Medical Director, are responsible for the promulgation of NDOC policies including the policy prohibiting cosmetic dentistry that prevents the placement of crowns and veneers on Plaintiff's teeth at NDOC.

As to qualified immunity, Plaintiff argues the law is clearly established that Plaintiff has a right to adequate dental treatment that would save his teeth from needless extraction and would protect him from health risks posed by the lack of veneers or crowns on his teeth, including gingivitis, heart disease, and tooth decay.  Finally, Plaintiff contends the facts in this case demonstrate recklessness or callous disregard and Defendants have given no reason for their refusal to permit him to obtain outside dental services.

**II. DISCUSSION**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th

1  Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue
2  of material fact. <u>Leisek v. Brightwood Corp.</u>, 278 F.3d 895, 898 (9th Cir. 2002). After the
3  moving party meets its burden, the burden shifts to the non-moving party to produce
4  evidence that a genuine issue of material fact remains for trial. <u>Id.</u> The Court views all
5  evidence in the light most favorable to the non-moving party. <u>Id.</u>

6  Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of [law],
7  subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of
8  any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to
9  the party injured in an action at law . . . or other proper proceeding for redress."
10 Consequently, to establish liability under § 1983, a plaintiff must allege the violation of a
11 right secured by the Constitution and laws of the United States, and must show that the
12 alleged deprivation was committed by a person acting under color of state law. <u>Broam v.
13 Bogan</u>, 320 F.3d 1023, 1028 (9th Cir. 2003).

14 To allay the "risk that fear of personal monetary liability and harassing litigation
15 will unduly inhibit officials in the discharge of their duties," government officials
16 performing discretionary functions may be entitled to qualified immunity for claims made
17 under § 1983. <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987). Qualified immunity
18 protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley
19 v. Briggs</u>, 475 U.S. 335, 341 (1986). In ruling on a qualified immunity defense, a court
20 considers whether the facts alleged show the defendant's conduct violated a constitutional
21 right. <u>Sorrels v. McKee</u>, 290 F.3d 965, 969 (9th Cir. 2002). If the plaintiff has shown a
22 deprivation of a constitutional right, the court must determine whether that right was clearly
23 established.[4] <u>Id.</u>

---

25  [4] Under <u>Saucier v. Katz</u>, courts previously were required to address whether the plaintiff
    established a constitutional violation before addressing whether the right was clearly established. 533
26  U.S. 194 (2001). However, the two-step procedure is no longer mandatory, and courts may consider

6

A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Wilkins v. City of Oakland, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). The court should make this second inquiry "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 200. An officer will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable. Wilkins, 350 F.3d at 955. The plaintiff bears the burden of showing that the right at issue was clearly established. Sorrels, 290 F.3d at 969. But, a plaintiff need not establish a court previously had declared the defendant's behavior unconstitutional if it would be clear from prior precedent that the conduct was unlawful. Blueford v. Prunty, 108 F.3d 251, 254 (9th Cir. 1997).

Here, Plaintiff alleges Defendants violated his Eighth Amendment rights.[5] The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual" punishment. U.S. Const. amend. VIII. "To sustain an Eighth Amendment claim, the plaintiff must prove a denial of 'the minimal civilized measure of life's necessities,' . . . occurring through 'deliberate indifference' by prison personnel or officers." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981) and Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)). Thus, where a prisoner challenges the conditions of confinement rather than the confinement itself, he must make two showings. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). First, the plaintiff must show the alleged deprivation was "sufficiently serious" to rise to the level of an Eighth Amendment violation. Id. Second, the plaintiff must show that the prison official acted with a

---

the second step first. Pearson v. Callahan, 555 U.S. 223 (2009).

[5] Plaintiff's First Amended Complaint also cites the Fourteenth Amendment to the U.S. Constitution, through which the Eighth Amendment is applicable to the States. Baze v. Rees, 553 U.S. 35, 47 (2008); Order (Doc. #13) at 2-3.

"sufficiently culpable state of mind," i.e., the official acted with deliberate indifference. Id.; Keenan, 83 F.3d at 1089.

With respect to whether the deprivation was sufficiently serious, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson, 217 F.3d at 731. Dental care is an important medical need, the denial of which may constitute an Eighth Amendment violation. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). Although a prisoner has a right to adequate medical care, a prisoner has "no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." Roberts v. Spalding, 783 F.2d 867, 870 (9th Cir. 1986).

With respect to deliberate indifference, the official must know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002) (quotation omitted). A prison official is deliberately indifferent to a prisoner's serious medical need if he denies, delays, or intentionally interferes with medical treatment. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1984).

However, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Id. Moreover, "a difference of medical opinion as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." Jackson v.

8

McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal quotation marks omitted).  Instead, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and that they chose this course in conscious disregard of an excessive risk to [the] plaintiff's health."  Id. (internal citations omitted); see also Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to [a prisoner's] serious medical needs.").

Here, no genuine issue of material fact remains that Defendants did not violate Plaintiff's Eighth Amendment right to adequate dental treatment.  Plaintiff has failed to present evidence raising an issue of fact that the course of treatment of extracting Plaintiff's teeth and providing a partial denture was medically unacceptable under the circumstances.  While Plaintiff's preference for veneers or crowns is understandable, that does not raise an issue of fact that the alternative course of treatment of extraction is medically unacceptable.  Nor does the fact that Bitar initially sought URP approval for Plaintiff's preferred treatment suggest an alternative course of treatment is medically unacceptable under the circumstances.  Bitar has stated in his affidavit that extraction of the four teeth and placement of a partial denture is a viable option, and Plaintiff has presented no evidence raising a genuine issue of material fact that extraction and a partial denture is not a viable treatment option.

Moreover, Plaintiff has failed to present admissible evidence that Defendants chose this course of action in conscious disregard of an excessive risk to Plaintiff's health.  The record reflects that each time Plaintiff filed a dental kite, he was seen by the dentist who recommended treatment.  That Plaintiff would prefer an alternative treatment does not raise an issue of fact that Defendants acted in conscious disregard of Plaintiff's dental needs.  Moreover, Bitar states in his affidavit that neither removal of the crown nor the refusal to permit Plaintiff to obtain veneers at his outside dentist would place Plaintiff at an increased risk for gingivitis, diabetes, or heart disease.  In response, Plaintiff relies only

upon his own statement that his independent research suggests he is at risk for these medical conditions. Plaintiff's unsubstantiated lay opinion does not raise an issue of fact that Defendants ignored an excessive risk to Plaintiff's health.

Even if Defendants' conduct amounted to deliberate indifference, Defendants are entitled to qualified immunity. Plaintiff has failed to demonstrate that a reasonable official would know that offering to extract Plaintiff's teeth and place a partial denture rather than allowing the prisoner to visit an outside dentist to provide veneers or crowns would amount to a violation of Plaintiff's Eighth Amendment rights. Plaintiff therefore has failed to demonstrate a clearly established right and Defendants are entitled to qualified immunity.

The Court therefore will grant Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claims. Because Defendants prevail on Plaintiff's Eighth Amendment claim, Plaintiff's request for punitive damages in relation to such a claim is moot. However, Plaintiff also bases his claims on Nevada constitutional and statutory provisions, and Defendants did not move for summary judgment on those grounds. Plaintiffs claims therefore remain pending to the extent they are based on state law.

## III. CONCLUSION

IT IS THEREFORE ORDERED that the Clerk of Court shall correct the caption to reflect the correct name of Defendant Bruce Bannister, incorrectly named as Robert Bannister.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. #16) is hereby GRANTED to the extent Plaintiff's claims are based on the U.S. Constitution.

DATED: February 25, 2012

_____
PHILIP M. PRO
United States District Judge